UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 15-CR-49(02)(MJD/FLN) |
| Plaintiff, | |
| vs. | **DEFENDANT MOHAMED FARAH'S SENTENCING POSITION** |
| Mohamed Abdihamid Farah, | |
| Defendant. | |

## INTRODUCTION

Defendant Mohamed Farah ("Farah") respectfully submits this sentencing memorandum in support of his requests for a downward departure and downward variance. Numerous factors support a sentence shorter than the life term recommended in the PSR. These factors include a reduction of Farah's criminal history category from VI to I, his acceptance of responsibility, his family support, his susceptibility to radicalization and propaganda, and the value that he could provide to his family and community if rehabilitated.

## ARGUMENT

The recommended Guideline sentence for Farah is a life sentence, due to the high initial score of the Conspiracy to Murder Outside the United States charge and enhancements because the offense was committed with terroristic connections. The nature of this charge and the terrorism enhancements grossly exaggerate the culpability of Farah and fail to account for mitigating factors. Each factor will be discussed in turn, and their

1

combined presence supports a reduced sentence from the life sentence recommended by the Guidelines.

## I. FARAH'S CRIMINAL HISTORY CATEGORY SHOULD BE TREATED AS I, NOT VI, BECAUSE THE TERRORISM ENHANCEMENT SHOULD NOT APPLY.

Farah is treated as an offender with a criminal history category of VI in this case because USSG §3A1.4(b) automatically sets an offender's criminal history category to VI when the crime is intended to promote a federal crime of terrorism. This adjustment breaks from the normal calculation of a criminal history category based upon prior offenses. Indeed, the criminal history category in this case is less of a history score and, instead, an additional enhancement for the current offense on top of other enhancements already factored in.

The terrorism enhancement fails to promote the core goals of factoring a defendant's criminal history into sentencing. The stated goals are to hold a defendant with prior criminal behavior more culpable than a first offender, to send a message of deterrence to avoid repeat offenders, and to incarcerate those who demonstrate a low probability of successful rehabilitation. USSG Ch.4, Pt.A, intro. comment.

Here, Farah's only prior criminal history involved petty misdemeanor vehicle violations. (PSR ¶ 173.) He is not more culpable due to prior offenses, there would be no deterrent effect to prevent repeat offenders by artificially inflating the category of a first-time offender, and Farah has not demonstrated that he is unable to rehabilitate himself. The criminal history category enhancement denies Farah and this Court the opportunity to distinguish him from other offenders who committed similar acts but had previous criminal

convictions. Farah's conduct for the criminal offense itself is accounted for in the offense score. This Court should sentence Farah in accordance with his true criminal history category—I—not the artificial score that unnecessarily enhances Farah's culpability based upon the current offense but disguised as a history score. Accordingly, this Court should grant Farah's request for a downward departure and sentence him as a defendant with a criminal history category of I.

**II.   FARAH SHOULD BE GRANTED AN ADJUSTMENT FOR ACCEPTANCE OF RESPONSIBILITY.**

Although the PSR did not recommend an adjustment for acceptance of responsibility, this Court has discretion to evaluate Farah's acceptance of responsibility and is entitled to deference on review. USSG §3E1.1, comment (n. 2 and n.5). Farah concedes that he did not accept responsibility initially for his involvement in the offenses. However, Farah's letter and the PSR detail the circumstances leading to the charges, including radicalization efforts by ISIS. (PSR § 150.)

It took time for Farah to remove himself from the corrupting influence of the propaganda produced by ISIS. During the time during and following the offenses, Farah was unable to think clearly and objectively to recognize the harm that his actions were causing. Farah believed that he was pursuing just causes, such as the protection of innocent Syrians being attacked by a ruthless dictator. Through the legal process and the time away from ISIS propaganda, Farah has been able to come to his senses and see the situation for what it is. He now comes before this Court remorseful and accepting of his role in support of a terrorist organization. The Court should examine Farah as he stands now at sentencing

3

and consider Farah's mindset now that he is free external psychological influences. Farah's statements and conduct since sentencing show an acceptance of responsibility, and this Court should use its discretion to appropriately adjust the offense level accordingly.

### III. A DOWNWARD VARIANCE IS APPROPRIATE PURSUANT TO 18 U.S.C § 3553(a).

When sentencing a defendant, this Court should consider the following factors in 18 U.S.C. § 3553(a):

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

　　a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

　　b. to afford adequate deterrence to criminal conduct;

　　c. to protect the public from further crimes of the defendant; and

　　d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

The Court is further directed to impose a sentence sufficient, but not greater than necessary to comply with the needs described above. 18 U.S.C. § 3553(a). A life sentence would be far greater than necessary to comply with the concerns described in § 3553(a)(2).

### A. Farah's culpability supports a lower sentence.

The first three factors in § 3553(a)(2) concern the culpability of the defendant and social benefits that occur from punishing offenders. These needs are met through a substantial—but not maximum—sentence. In this case, Farah attempted to provide support to a designated terrorist organization outside the United States. It is incontestable that this conduct should be punished and other people who may consider aiding ISIS should be deterred.

As to the first factor, just punishment for the crime, a substantial sentence is sufficient. A life sentence is the maximum term of incarceration available. It should be reserved for the absolute worst offenses and offenders. Here, Farah's involvement demonstrates that he is not maximally culpable despite intentions to aid ISIS. Farah did not provide financial or other support to ISIS beyond his attempts to leave and assist others with leaving the United States. Farah did not actively encourage and solicit others to join ISIS. Farah did not create and promote ISIS propaganda. Farah never actually harmed any people, physically or financially. There are numerous ways in which Farah's involvement could have been greater. Accordingly, a maximum penalty for less than maximum assistance to ISIS is overly harsh.

The second factor, deterrence, is also satisfied with a less-than-life sentence. ISIS recruits are often young and impressionable. They are at a vulnerable time in their lives. Those that can be deterred will be deterred by any substantial sentence that deprives them of their youth, social circle, and family. Then, there will be those where a sentence of any

length, including life, will not be a deterrent. There is no additional deterrence to be gained by converting a substantial sentence into a life sentence.

The third factor, protecting the public, can be met by removing an offender from society while they are at a young, vulnerable age. ISIS's tactics will likely be ineffective once an offender develops greater critical thinking skills and becomes less radical as they age. Accordingly, the public can be protected from an offender by incarcerating them during the vulnerable, younger years, and an offender's release once they have fully developed mental capabilities should not pose any additional, undue harm.

### B.   Farah's characteristics support a reduced sentence.

The factors supporting incarceration are balanced against those that proscribe unnecessarily lengthy sentences and the defendant's amenability to rehabilitation. Here, there are many factors suggesting that Farah may rehabilitate himself and deserves an opportunity to be free from confinement. First, Farah is quite young at 22 years old. At his age, he was particularly vulnerable to ISIS's radicalization efforts. As he ages, he will develop into a different person, and he should be afforded an opportunity to be released once he has sufficiently paid for the crimes of his youth.

Second, Farah's lack of a criminal history demonstrates that he may be a low risk of recidivism. Before Farah's involvement with ISIS, he faced no criminal trouble for theft, assault, or any other activity. Indeed, during his plan to travel to assist ISIS, he still remained relatively law-abiding. Instead, he was driven by the propaganda and a misplaced sense of justice. At his core, Farah does not seek to break the law or cause harm to innocent civilians. His history supports a reduced sentence.

Third, this Court should consider Farah's mental state throughout the conspiracy. The PSR details the efforts of ISIS to spread propaganda and radicalize people. Farah, the son of immigrants from country with civil unrest, was particularly vulnerable. Farah mistakenly thought that he could help the civilians of Syria overthrow a dictator and bought into the lies of ISIS. It was this misplaced sense of justice that motivated Farah. Farah's vulnerability to ISIS's propaganda is another factor supporting a reduced sentence.

Finally, Farah's family history supports a reduced sentence. The PSR details Farah's support of his family, with his siblings referring to him as a "third parent." (PSR § 182.) Farah's family supported him, and he worked to support his family. Now that Farah has been cured of the influence of ISIS, he can place his priorities with his family and be a provider again. His past history of supporting his family, and their continued support suggest that a reduced sentence would be appropriate.

### C. A life sentence would produce a disparate sentence.

A central aim of the Sentencing Guidelines is to eliminate undue sentencing disparities. Here, sentencing Farah to a life sentence would create a large disparity between the co-defendants in this case, as well as compared to other defendants charged with similar conduct.

First, Farah's possible sentence is far harsher than many codefendants who plead guilty, despite Farah's involvement in the offense being substantially similar to the other codefendants. (PSR ¶ 157.) Other defendants were able to avoid convictions for the most serious charge, conspiracy to commit murder outside the United States. Farah was not offered such a deal and only had the opportunity to plead to the counts as charged.

Essentially, Farah's sentence has been enhanced because a plea agreement offered to other co-defendants was not available to him. Effectively, Farah faces an enhanced sentence primarily due to prosecutorial discretion, not Farah's greater culpability or involvement in the offense. Because Farah's involvement in the offense is similar to the co-defendants, Farah should be sentenced similarly, without a reduction of accepting responsibility before trial. Even without that adjustment, a life sentence is extremely excessive, so this Court should impose a reduced sentence consistent with the sentences received by the co-defendants.

Second, a life sentence would be inconsistent with sentences imposed on defendants in other, similar cases. A study by the Center on National Security at Fordham Law is attached as Exhibit A. That study examined a broad range of ISIS prosecutions from March 2014 through June 2016. The factual circumstances of the defendants involved in those cases is similar to the conduct in this case; young men were radicalized by ISIS and sought to leave the United States to assist ISIS. (Ex. A, at 2-5, 10.) Notably, the average sentence for these offenders is 9.2 years. (*Id.* at 21.) At worst, Farah's conduct in this case would be considered average compared to other terrorism supporters. Farah did not harm any U.S. citizens or have any plans to commit domestic terrorism. Farah did not actively recruit or carry out ISIS activities with a purpose to encourage others to engage in terrorism. Rather, he worked with a group that tried to get funds together to fly to Syria to engage in an international war. He was detained before he could leave the country and ultimately did nothing to actually assist ISIS. A life sentence would incarcerate Farah far longer than others who were more culpable, such as Osama bin Laden's personal driver, who received

five-and-a-half years (Ex. B) and a weapons dealer who conspired to sell millions of dollars of weapons, including missiles, to a Colombian terrorist organization who received 25 years (*United States v. Viktor Bout*, Court File No. 08-cr-365 (S.D.N.Y. Apr. 9, 2012). Because Farah's conduct is consistent with an average defendant convicted for attempting to leave the United States to assist ISIS, this Court should impose a sentence similar to the 9.2-year average for similar defendants.

## CONCLUSION

A life sentence recommended by the Guidelines is overly harsh when applied to Farah. Because of Farah's minimal criminal history, acceptance of responsibility, and personal factors, a reduced sentence is appropriate. A reduced sentence would still meet the sentencing goals enumerated in § 3553(a), and a life sentence would be unnecessarily lengthy. Accordingly, Farah respectfully requests that this Court grant his requests for a departure and variance and grant a reduced sentence.

**MURAD DEFENSE, P.A.**

Dated: November 3, 2016

*s/ Murad Mohammed*
Murad Mohammed
Minnesota Attorney Reg. No. 0386909
333 South Seventh Street, Ste. 2850
Minneapolis, MN 55402
Direct: 651.264.3080
murad@muraddefense.com

ATTORNEY FOR DEFENDANT
MOHAMED ABDIHAMID FARAH