UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 15-49(2) (MJD/HB)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANT'S MOTION** |
| | ) | **UNDER 28 U.S.C. § 2255** |
| MOHAMED ABDIHAMID FARAH, | ) | **TO VACATE, SET ASIDE** |
| FCI - Forrest City Medium, | ) | **OR CORRECT SENTENCE** |
| Inmate # 49786-298 | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Mohamed Abdihamid Farah hereby moves the Court to vacate, set

aside, or correct his sentence pursuant to 28 U.S.C. § 2255 based on the following:

1.  The United States District Court of Minnesota sentenced Mr. Farah on

November 16, 2016 and entered a judgment of conviction against Defendant on

November 30, 2016 for one count of Conspiracy to Murder Outside the United States in

violation of 18 U.S.C. § 956(a), one count of Conspiracy to Provide Material Support to a

Designated Foreign Terrorist Organization in violation of 18 U.S.C. § 2339B(a)(1), two

counts of Attempting to Provide Material Support to a Designated Foreign Terrorist

Organization in violation of 18 U.S.C. § 2339B(a)(1), one count of Perjury in violation of

18 U.S.C. § 1621 and one count of making a False Statement to agents of the FBI in

violation of 18 U.S.C. § 1001. (DCD Doc. 65). Senior United States District Judge

Michael J. Davis sentenced Mr. Farah to a total term of imprisonment of 360 months, plus

a life term of supervised release.

2.   Mr. Farah was originally charged in a Superseding Indictment filed on May 18, 2015 with one count of Conspiracy to Provide Material Support to a Designated Foreign Terrorist Organization in violation of 18 U.S.C. § 2339B(a)(1), two counts of Attempting to Provide Material Support to a Designated Foreign Terrorist Organization in violation of 18 U.S.C. § 2339B(a)(1), and one count of making a False Statement to agents of the FBI in violation of 18 U.S.C. § 1001. (DCD Doc. 65).  On October 21, 2015, the government obtained a Second Superseding Indictment against Mr. Farah and four co-defendants who had not entered into plea agreements. (DCD Doc. 292). This Indictment made the same charges against Mr. Farah as the Superseding Indictment alleging material support to a designated foreign terrorist organization and a false statement to an FBI agent (Counts 2, 5, 6 and 12).  It also charged Mr. Farah and his co-defendants with Conspiracy to Murder Outside the United States in violation of 18 U.S.C. § 956(a) (Count 1), and Perjury in violation of 18 U.S.C. § 1621 (Count 9). (DCD Doc. 292).

3.   Mr. Farah pled not guilty to the charges in the superseding indictments. A jury trial was held for Mr. Farah and two co-defendants for seventeen days form May 9 - June 1, 2016. He was found guilty on all counts.

4.   Mr. Farah did not testify at trial or any pre-trial or post-trial hearing. He did attempt to speak at hearing on a motion to replace his counsel on May 9, 2016.

5.   Mr. Farah timely appealed his conviction and sentence to the United States Court of Appeals for the Eighth Circuit, Case No. 16-4363. The Court of Appeals

affirmed Mr. Farah's conviction and sentence in a decision filed on August 10, 2018,

United States v. Farah, 899 F.3d 608 (8th Cir. 2018). Mr. Farah's grounds for appeal were

that the trial court erred by denying his motion to substitute counsel, by instructing the

jury on conspiracy to commit murder outside the United States without a requirement of

specific intent to commit murder, by refusing to instruct the jury on the defenses of

combatant immunity and defense of others, and by imposing a sentence that was

substantively unreasonable.

6.   After the appeals court's decision, Mr. Farah filed a petition for rehearing en

banc or rehearing by the panel. The court of appeals denied that petition in an order filed

on October 12, 2018.

7.   Mr. Farah then filed a petition for writ of certiorari to the United States

Supreme Court, Docket No. 18-7430. The Supreme Court denied the petition on February

25, 2019. Farah v. United States, 139 S.Ct. 1275. The grounds for the petition for writ of

certiorari were challenges to the court of appeals' application of harmless error analysis to

the failure to properly instruct the jury on an element of a charged offense, and its

determination of witness credibility when applying harmless error analysis.

8. Mr. Farah has not filed any other motions, petitions, or applications concerning

this judgment of conviction in any court.

7.   Mr. Farah is being held in violation of the Constitution, laws, or treaties of the

United States based on the following grounds:[1]

## GROUND ONE - Ineffective Assistance of Counsel - Failure and Refusal to Engage in Plea Neogations or Advise Defendant of His Right to Plead Guilty.

a) From the time of the Superseding Indictment in May, 2015 until the Second Superseding Indictment on October 21, 2015, Mr. Farah's counsel never attempted to engage in plea negotiations with the prosecution, or if they did, never informed Mr. Farah of the results of those negotiations. His counsel further never informed Mr. Farah of his right to plead guilty to the charges in the Superseding Indictment with or without a plea agreement. Mr. Farah's attorneys never informed him that the prosecution intended to bring another superseding indictment with an added charge of conspiracy to commit murder which carried a potential sentence of life imprisonment even though the prosecution had informed defense counsel of this intention months prior to obtaining the second superseding indictment and (according to attorneys for co-defendants) had invited plea negotiations prior to the Second Superseding Indictment. Mr. Farah's attorneys did

---

[1] The factual statements in this Motion regarding plea discussions (or lack thereof) are based on information from Mr. Farah, attorneys for co-defendant's,  Mr. Farah's parents, and records obtained from Washington and Sherburne County Jails. Undersigned counsel submitted a Freedom of Information Act Request to the Department of Justice - Executive Office for United States Attonreys on October 1, 2019 for information pertinent to this motion. The DOJ refused undersigned counsel's request for an expedited response, and has otherwise not responded to the FOIA request to date. The DOJ attorney identified to undersigned counsel as responsible for responding to the request has not returned phone calls from undersigned counsel. Undersigned counsel further requested documentation of pertinent subject matter from Mr. Farah's trial counsel. Murad Muhammad provided what appears to be a partial file at the time undersigned counsel took on the appeal, but otherwise refused to discuss the case. Chinedu Nwaneri did not respond to undersigned counsel's letter requesting pertinent documents.

not inform him of the forthcoming charge or his opportunity to enter into a plea

agreement or a straight plea to avoid the more serious charge. The prosecution had

offered co-defendants at least as culpable as Mr. Farah the opportunity to plead guilty

prior to the Second Superseding Indictment. Had Mr. Farah been so advised, he would

have pled guilty to any or all charges in the Superseding Indictment in order to avoid

facing the charge of conspiracy to commit murder. As reflected at trial, Mr. Farah's

substantial challenges were to the conspiracy to commit murder charge. Had Mr. Farah

pled guilty to the lesser charges, the district court would have certainly imposed a

substantially lower sentence based on the lower severity of the offenses, Mr. Farah's

willingness to accept responsibility, and the substantially lower sentences imposed on co-

defendants who plead guilty.

According to the records from the Washington County Jail where Mr. Farah's

attorneys visited him a total of four times between the time that he was brought to

Minnesota pursuant to the Superseding Indictment and the filing of the Second

Superseding Indictment, including June 9, 2015, June 10, 2015, June 22, 2015, and

September 10, 2015. Mr. Farah also met briefly with his attorneys after a reverse proffer

meeting with the prosecutors. Mr. Farah does not believe any of the meetings lasted for

more than an hour. Mr. Farah never had any phone conversations with any of his

attorneys during this time period. His attorneys never provided him with any discovery,

motion papers or any documents of any kind relating to the case.

Prior to Mr. Farah's first meetings with his attorneys on June 9 and 10, 2015, he had been transported from San Diego after being arrested. Mr. Farah had read the Superseding Indictment thoroughly. During the first meeting, the attorneys present explained the meaning of the charge of material support. Mr. Farah understood his liability for the offense and inquired about his options for resolving the case. His counsel indicated that the only option was to go to trial.

During the subsequent meetings with his attorneys, Mr. Farah asked if there was any options for pleading guilty. His attorneys responded that there was no plea offer available. They never advised Mr. Farah of any chance to engage in plea negotiations or that he had the option of pleading guilty to some or all of the charges with or without an agreement with the prosecution. The prosecution arranged a reverse proffer meeting where they explained their case to Mr. Farah and his attorneys for the purpose of encouraging him to enter a plea. After that meeting, Mr. Farah was obviously discouraged about his prospects in the case and asked his attorneys if there was any way to resolve the case. His attorneys responded that no plea offer was available.[2]

One of the participants in all of the meetings, Hassan Jami, presented himself as an attorney.  Mr. Farah understood throughout the proceedings that Jami was an attorney. In fact, Mr. Jami was a paralegal with no law license. Mr. Jami, while acting as if he was an

---

[2]  After the trial of this case, Mr. Farah's trial attorney Murad Muhammad was disbarred for multiple dishonest acts relating to various clients. Mr. Farah's counsel before trial Chinedu Nwaneri subsequently had his attorney license suspended for submitting a false affidavit to a court and then lying during the disciplinary investigation.

attorney and clearly serving as part of the legal team, repeatedly gave Mr. Farah religious

advice when discussing how to address the charges. On multiple occasions, including in

response to Mr. Farah's inquiries about whether the case could be resolved, Mr. Jami

made religious statements conveying a message that Mr. Farah should fight the charges.

Jami told Farah that God' was doing to see him through and help him. Jami stated that

Farah's situation was a test, that people before Farah including prophets were tested, and

that good things would happen if Farah was patient and remained steadfast. Jami

discussed religion in every legal meeting and always conveyed the message that Mr.

Farah was doing right by staying the course.

Jami also advised Farah's parents that Farah and his co-defendant brother should

not plead guilty, and based on court records, gave similar advice to parents of another co-

defendant. Jami successfully convinced Farah's parents to fire the attorney for Farah's

brother when that attorney encouraged his brother to plead guilty.

Mr. Farah was a very young man who had previously been religiously brainwashed

which was the cause of his underlying conduct. He was susceptible to religious influence

and did not have any education or understanding of the difference between religious and

legal advice. His attorneys violated Mr. Farah's right to effective assistance of counsel by

providing religious opinions or allowing a legal staff person to present religious opinions

as legal advice. Mr. Farah's rights to effective assistance of counsel and to due process

were violated when a member of the legal team advised Farah not to plead guilty based

on religious ideology.

b) Mr. Farah did not raise this issue of ineffective assistance of counsel on appeal because it would have been premature. This proceeding is the first opportunity to make a record of that actions or inactions of Mr. Farah's counsel.

**GROUND TWO - Ineffective Assistance of Counsel - Failure to Inform Defendant of the Evidence and Law underlying the Charges.**

a) Mr. Farah's trial counsel never provided him with discovery, never went over the evidence, and never explained to him the legal basis for the charge of conspiracy to commit murder. Had Mr. Farah been properly informed, he would have understood the strength of the evidence and pled guilty. A plea of guilty prior to trial would have certainly led to a lower sentence due to the willingness to accept responsibility and based on the substantially lower sentence imposed on a co-defendant who pled guilty after the second superseding indictment.

According to jail records, Mr. Farah's counsel met with him on six occasions after the issuance of the Second Superseding Indictment and before trial, November 1, 2015, December 16, 2015, February 8, 2016, April 14, 2016, April 27, 2016 and May 4, 2016. There was also a meeting in lockup prior to a hearing on April 1, 2016. Mr. Farah does not believe that any of the meetings lasted more than two hours and most were substantially less. Mr. Farah does not believe he had any phone conversations with his counsel although he tried unsuccessfully to call Murad Muhammad numerous times in

advance of trial.

At the meeting on November 1, 2015, counsel spend substantial time going over the Second Superseding Indictment, and discussing the seriousness of the Conspiracy to Commit Murder charge. Counsel never gave Mr. Farah a copy of the Second Superseding Indictment to read for himself. His counsel indicated in this and a subsequent meeting plans to arrange a plea deal involving the dismissal of this charge. Such an offer was relayed by co-defendant counsel on behalf of all remaining co-defendants but the prosecution did not agree.

Mr. Farah's counsel never had any substantive discussion with him about the evidence in the case. They never provided him with copies of any discovery, and did not go over the evidence of discovery.

Chinedu Nwaneri and Hassan Jami were pressured to withdraw from the case after revelations the Jami had improperly tried to influence co-defendants not to plead guilty. Mr. Farah's counsel never informed him about the allegations against Jami or the reasons for withdrawal. Murad Muhammad met with Farah on April 1, 2016 in lock up just before the court hearing, informed Farah that Muhammad would be the only counsel, and advised Farah to tell the Court that he was comfortable with Muhammad being the only counsel. Had Mr. Farah been aware the underlying allegations that led Nwaneri and Jami to withdraw, he would not have had confidence in any of his legal team. If Mr. Farah had been aware that the most powerful person on his legal team had his own religious or

political agenda, Mr. Farah's perspective about the case, the advice he had been given, and whether to try to resolve the case would have changed.

The first time that Mr. Farah's counsel ever advised him to plead or even discussed the possibility of pleading guilty were during  meetings in April, 2016. Muhammad frantically told Mr. Farah that he needed to plead guilty. Mr. Farah did not want to plead guilty to conspiracy to commit murder because he did not know the evidence or the legal basis for the charge. Mr. Muhammad expressed frantic concern about not being compensated for his work. Muhammad did not discuss or go over the substantive evidence at that meeting and had not done so previously. Farah was never provided with copies of discovery documents or recordings. Muhammad never showed Mr. Farah any of the audio or video recordings provided by the prosecution except for one propaganda video which Muhammad said was fake and was not introduced at trial. Mr. Farah would have pled guilty  to the conspiracy to commit murder charge if he understood the  evidence and the law.

b) Mr. Farah did not raise this issue of ineffective assistance of counsel on appeal because it would have been premature. This proceeding is the first opportunity to make a record of that actions or inactions of Mr. Farah's counsel.

## GROUND THREE - Ineffective Assistance of Counsel - Failure to Provide any Legal Advice or Adequate Representation at Sentencing.

a) Mr. Farah's counsel failed to meaningfully inform or consult with Mr. Farah about issues relating to sentencing, or provide meaningful advocacy. According to jail records, Mr. Muhammad met with Mr. Farah on three occasions between the end of trial

and sentencing, June 30, September 16 and November 15, 2016. The meetings on June 30 and September 15 were interviews with the probation officer and there was no substantive discussion with Mr. Muhammad.

Mr. Muhammad never provided Mr. Farah with a copy of either the preliminary or final Presentence Investigation Report, and did not go over it with Mr. Farah. Mr. Farah therefore never had an opportunity to ascertain whether the information in the Report was accurate or if there was any significant information missing. Mr. Muhammad informed the probation officer that he had no objections or proposed amendments to the preliminary PSR without having consulted with Mr. Farah. At the one substantive meeting on November 15, 2016 on the eve of sentencing, Mr. Farah complained about not having received the PSR. Mr. Farah was then aware that a co-defendant had a copies of his preliminary and final PSR and the co-defendant met with his attorney multiple times to discuss it. Mr. Farah told Mr. Muhammad that he was going to tell the judge that Muhammad had not shown Farah the PSR. Muhammad convinced Mr. Farah that it would not help his case.

Had Mr. Farah seen the PSR, he would have been able to add additional information which would have mitigated the Court's impression that he was a hardened criminal. Mr. Farah would have provide information about children he had tutored for a period of years through several after-school programs with community based organizations. Mr. Muhammad should have found out and solicited support letters from

11

the students and administrators of the organizations.

Had counsel engaged in proper preparation for sentencing, Mr. Farah would have been able to prepare a more persuasive statement at sentencing and been prepared to answer the Court's searing questions about his conduct which he was unprepared for.

Counsel's failure to provide effective representation through the sentencing process resulted in a longer sentence.

b) Mr. Farah did not raise this issue of ineffective assistance of counsel on appeal because it would have been premature. This proceeding is the first opportunity to make a record of that actions or inactions of Mr. Farah's counsel.

**Therefore,** Mr. Farah requests that the Court grant the following relief: vacate Mr. Farah's convictions and sentence including for conspiracy to commit murder outside the United States, permit Mr. Farah to plead guilty to the charges other than conspiracy to commit murder outside the United States, re-sentence Mr. Farah, and grant any other relief to which he may be entitled.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: February 23, 2020          LAW OFFICE OF JORDAN S. KUSHNER

By  s/Jordan S. Kushner
    Jordan S. Kushner, ID 219307
    Attorney for Defendant
    431 South 7th Street, Suite 2446
    Minneapolis, Minnesota  55415
    (612) 288-0545